Gregory M. Saylin (Bar No. 185328)
David R. Williams (Bar No. 311927)
HOLLAND & HART, LLP
222 S. Main Street, Suite 2200
Salt Lake City, UT 84101
Telephone: (801) 799-5800
Facsimile: (801) 799-5700
Email: gmsaylin@hollandhart.com
        drwilliams@hollandhart.com

Attorney for SkyWest Airlines, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| DONNA CLASEN, an individual,<br><br>           Plaintiff,<br><br>v.<br><br>SKYWEST AIRLINES, INC., a Utah corporation; and DOES 1-50, inclusive,<br><br>           Defendant. | **DEFENDANT SKYWEST AIRLINES, INC.'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**<br><br>Case No:  ED CV 19-460-DMG (KKx)<br><br>Judge Dolly M. Gee<br>Magistrate Judge Kenly Kiya Kato<br><br>Hearing Date:      November 13, 2020<br>Time:                   2:00 p.m.<br>Courtroom:         8C, 8th Floor<br>                           350 West 1st Street<br>                           Los Angeles, CA  90012 |

Defendant SkyWest Airlines, Inc., ("SkyWest") respectfully submits the following Statement of Uncontroverted Facts and Conclusions of Law pursuant to

Local Rule 56-1 in support of SkyWest's Motion for Summary Judgment or in the Alternative, Summary Adjudication:

## STATEMENT OF UNCONTROVERTED FACTS ("SOUF")[1]

| NO. | UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|---|
| **Ms. Clasen's Employment at SkyWest** | | |
| 1. | SkyWest is a regional air carrier headquartered in St. George, Utah. | Declaration of Sonya Wolford ("Wolford Decl."),[2] ¶ 3. |
| 2. | In September 2002, Ms. Clasen was hired by SkyWest when she was 55-years old as a full-time administrative assistant in the InFlight Department supporting the crewmembers based out of Palm Springs. | Declaration of Gregory Saylin ("Saylin Decl.") Ex. A (Deposition of Donna Clasen ("Clasen Depo.") 15:3-9, 41:17-22); Wolford Decl., ¶ 6. |
| 3. | Ms. Clasen's employment at SkyWest was at-will. | Declaration of Casey Madsen ("Madsen Decl."), Ex. A and Ex. B, ¶ 6; Clasen Depo. Exhibit 50. |

---

[1] For purposes of summary judgment, SkyWest views the facts in a light most favorable to Plaintiff. SkyWest reserves the right to controvert the facts stated herein at trial.

[2] The declarations cited in the SOUF are submitted contemporaneously herewith.

| NO. | UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|---|
| **Reorganization of SkyWest InFlight** | | |
| 4. | As of late 2016 and into early 2017, the Palm Springs domicile was SkyWest's second smallest domicile. | Declaration of Kathy Makasian ("Makasian Decl."), Ex. A; Clasen Depo. 36:4-7; Wolford Decl., ¶ 7. |
| 5. | Beginning in late 2016, Ms. Makasian (the Director of InFlight Operations) and Ms. Wolford (Vice President of InFlight) began analyzing the ratio of crewmembers to administrative assistants to determine how best to allocate the administrative assistants to the domiciles that needed them most. | Saylin Decl., Ex. B (Deposition of Kathy Makasian ("Makasian Depo.") 60:11-62:6) and Ex. C (Deposition of Sonya Wolford ("Wolford Depo.") 17:17-25, 18:9-22, 27:7-24). |
| 6. | InFlight had a limited allocation of hours available for administrative assistants in the domiciles as a whole; to increase the hours in one domicile, they had to reduce them in another. | Wolford Decl., ¶ 8. |
| 7. | All 14 of the other SkyWest domiciles had a higher crewmember to administrative assistant ratio with some domiciles not employing a single administrative assistant. | Wolford Depo. 28:2-8; Makasian Decl., Ex. A. |

| NO. | UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|---|
| 8. | While Ms. Clasen was supporting 90 crewmembers in Palm Springs, Chicago had 1267 crewmembers being supported by one full-time and one part-time administrative assistant. | Makasian Decl., ¶ 6, Ex. A. |
| 9. | In early 2017, Ms. Makasian and Ms. Wolford determined that SkyWest should restructure the Palm Springs administrative assistant position so the administrative hours could be reallocated to the Chicago domicile. | Makasian Depo. 45:6-25, 60:11-14, 60:25-61:2, Exhibit 5. |
| 10. | In addition to the impact on the Palm Springs administrative assistant position held by Ms. Clasen, the reorganization plan eliminated the position of 49-year old Eva Curts in the Houston domicile. | Makasian Depo. 57:1-6, 63:4-5; Makasian Decl., ¶ 7. |
| **Restructuring Ms. Clasen's Position** | | |
| 11. | Sometime between February 19, 2017 and March 10, 2017, InFlight management made the decision to restructure Ms. Clasen's administrative | Makasian Depo. 64:15-65:1, 71:17-20, 74:22-75:11, Exhibit 6; Clasen Depo. 75:22-76:4, 78:5-8, 80:1-4. |

4

| NO. | UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|---|
| | assistant position in Palm Springs to part-time—two days a week. | |
| 12. | As a direct result of the reduction of the Palm Springs administrative assistant role to part-time, 67-year old Barbara Jean Claude's administrative assistant position in Chicago was restructured from part-time to full-time. | Makasian Depo. 45:4-25, 62:15-63:7; Wolford Decl., ¶ 9. |
| 13. | On March 24, 2017, Ms. Makasian flew to the Palm Springs domicile where she met with Ms. Clasen in-person to inform her of the reorganization plan. | Clasen Depo. 75:22-76:3, Exhibit 20; Makasian Decl., ¶ 8. |
| 14. | Ms. Makasian told Ms. Clasen that her position was being changed to part-time so that an administrative assistant in Chicago could go to full-time. | Clasen Depo. 75:22-76:5, 77:13-78:1; Makasian Depo. 45:14-25. |
| 15. | While Ms. Clasen was "hurt" by the decision to restructure her position to part-time, she does not believe that "downsizing" her position was "improper". | Clasen Depo. 122:4-16, 123:6-10. |

DEFENDANT'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

| NO. | UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|---|
| 16. | If Ms. Clasen had chosen to stay at SkyWest part-time, she could have. | Clasen Depo. 129:19-21. |
| **Ms. Clasen's Resignation** | | |
| 17. | Ms. Clasen was offered the chance to retire if she chose not to continue part time, which would permit her to retain flight benefits. | Madsen Decl., ¶¶ 8-9. |
| 18. | Departing employees who qualify for this benefit often elect "retirement" for this reason even if intending to find new employment elsewhere. | Madsen Decl., ¶ 10. |
| 19. | Ultimately, Ms. Clasen wasn't interested in retirement or the travel privileges that came with that status. | Clasen Depo. 85:24-25, 86:16-87:17, 126:20-127:10, Exhibit 20. |
| 20. | On April 26, 2017, Ms. Clasen declined the part-time position and formally resigned, with her last day worked on May 11, 2017. | Clasen Depo. 80:1-16, 87:18-22, 132:15-20, Exhibit 24; Makasian Decl., ¶ 9. |
| **Ms. Clasen's Interactions at SkyWest** | | |
| 21. | According to Ms. Clasen, beginning in early 2016, a flight attendant based out of Palm Springs, Harold Allen who was | Clasen Depo. 66:8-12, 68:14-69:7. |

DEFENDANT'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND
CONCLUSIONS OF LAW

| NO. | UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|---|
| | 64 years old, occasionally made comments to Ms. Clasen along the lines of: "Hi honey, are we ready to retire yet?" or "we really need to retire, we're getting too old for this." | |
| 22. | Harold Allen was not involved in the decision to restructure the InFlight administrative assistants and had no input or influence whatsoever in it. | Makasian Depo. 46:24-47:7; Wolford Decl., ¶ 10. |
| **Ms. Clasen's Leave** | | |
| 23. | In early 2017, Ms. Clasen requested leave to care for her daughter after rotator cuff surgery. | Clasen Depo. 144:15-145:2, Exhibit 29. |
| 24. | While there were conversations and clarification sought about what type of leave Ms. Clasen would take and how it would be structured, that Ms. Clasen would be permitted to take time off to care for her daughter was not in question. | Makasian Decl., ¶ 10. |
| 25. | SkyWest approved Ms. Clasen's leave request, and she took concurrent | Makasian Decl., ¶ 10, Ex. B. |

**DEFENDANT'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| NO. | UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|---|
|  | FMLA/CFRA leave from February 16, 2017 to February 26, 2017. |  |
| **Ms. Clasen's Fall** | | |
| 26. | On March 24, 2017, 45 minutes into her workday, Ms. Clasen's foot caught the edge of the suitcase and she fell. | Clasen Depo. 108:14-109:3. |
| 27. | Ms. Clasen was able to get back up after falling and finish her workday. | Clasen Depo. 110:6-13. |
| 28. | Even though Ms. Clasen saw a chiropractor at some point after the fall, she did not tell anyone at SkyWest. | Clasen Depo. 115:1-15. |
| 29. | Ms. Clasen's fall did not prevent her from performing her job at SkyWest. | Clasen Depo. 121:3-5. |
| 30. | Ms. Clasen is not, and has never been, disabled. | Clasen Depo. 12:11-14. |
| 31. | Ms. Clasen has not, and does not, have any impairments that affect her ability to work or to take care of herself, including: performing manual tasks, hearing, walking, standing, speaking, learning, reading, concentrating, communicating, thinking, or working. | Clasen Depo. 12:18-14:18, 65:19-21. |

**DEFENDANT'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| NO. | UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|---|
| **Ms. Clasen's Timekeeping and Overtime** | | |
| 32. | In May 2013, SkyWest started using a time keeping system called Dayforce and continued to use it through Ms. Clasen's last day worked. | Madsen Decl., ¶ 32. |
| 33. | Ms. Clasen accurately reported her time, including overtime, using SkyWest's timekeeping/payroll software. | Clasen Depo. 167:15-168:9, 171:4-14. |
| 34. | Between 2014 and 2017, there is only one instance where a supervisor modified Ms. Clasen's recorded time punch to "remove" time Ms. Clasen had entered into the system. It was done at Ms. Clasen's request. On February 8, 2017, Ms. Laralee Anderson changed Ms. Clasen' clock-out time as requested by Ms. Clasen. | Madsen Decl., ¶ 15, Exhibit C at 194[3]; Clasen Depo. 181:16-19, Exhibit 42; Declaration of Laralee Anderson ("Anderson Decl."), ¶ 5, Ex. A. |

---

[3]  It appears that Ms. Anderson inadvertently made the requested change to Ms. Clasen's February 8, 2017 clock-out time rather than her February 7, 2017 clock-out time as requested in Ms. Clasen's email.

9

| NO. | UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|---|
| 35. | Ms. Clasen's time and payroll records show she reported and was paid for overtime after February 2016 on the following dates:<br>• February 22, 2016<br>• February 24, 2016<br>• February 26, 2016<br>• June 22, 2016<br>• July 6, 2016<br>• July 8, 2016<br>• August 9, 2016<br>• August 11, 2016<br>• August 25, 2016<br>• August 30, 2016<br>• September 8-9, 2016<br>• September 29, 2016<br>• October 25-27, 2016<br>• November 7, 2016<br>• November 14, 2016<br>• January 19, 2017<br>• February 7, 2017<br>• March 7, 2017<br>• March 17, 2017<br>• May 2, 2017 | Madsen Decl., Ex. D at pp. 96-97, 110, 112, 116-19, 122, 125-26, 131, 135, 137, 142-43. |

**DEFENDANT'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| NO. | UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|-----|---------------------|---------------------|
|  | • May 4, 2017<br>• May 10, 2017 |  |
| 36. | Ms. Clasen is not aware of any specific date when she was not paid for the time that she worked. | Clasen Depo. 185:17-21. |

## CONCLUSIONS OF LAW

**Plaintiff's Age Discrimination Claim.**

1.     The *McDonnell Douglas v. Green* burden shifting applies to Plaintiff's discrimination claims under FEHA. *Guz v. Bechtel Nat'l, Inc.*, 24 Cal.4th 317, 338 (2000).

2.     The Fair Employment and Housing Act (FEHA), Cal. Gov. Code §§ 12940 *et seq.*, prohibits discrimination based on an employee's age (40 or over).

3.     To establish a FEHA violation, a plaintiff "must first establish a *prima facie* case of discrimination." *White v. Home Depot U.S.A. Inc.*, No. 17-CV-00752-BAS-AGS, 2019 WL 1171163, at *7 (S.D. Cal. Mar. 13, 2019).

4.     A *prima facie* case of discrimination requires Plaintiff to show that (1) she is at least forty years old; (2) she was performing competently in the position she held; (3) she suffered an adverse employment action; and (4) she was either replaced by substantially younger employee(s) with equal or inferior qualifications or discharged under circumstances otherwise giving rise to an inference of discrimination. *Smith v. W.W. Grainger, Inc.*, No. EDCV 18-1405 JGB (SPx), 2019 WL 1670942, at *7 (C.D. Cal. Feb. 5, 2019).

5.     Plaintiff's inability to show that she was replaced by a significantly younger worker weighs heavily against an inference of discrimination.  *Guz*, 24 Cal.4th at 338.

6.     The 67-year old woman who was moved from a part-time position to full-time because Plaintiff's job was restructured is not significantly younger than plaintiff as a matter of law under FEHA. *Id.*, at 354.

7.     Plaintiff has not presented evidence that she was discharged under circumstances otherwise giving rise to an inference of discrimination such as where persons significantly younger, but otherwise similarly situated, were treated more favorably. *Id.*, at 366 and 368.

8.     Plaintiff cannot show discrimination was a "substantial motivating factor" for restructuring her position to part-time. *Harris v. City of Santa Monica*, 56 Cal.4th 203, 232 (2013).

9.     SkyWest may also meet its initial burden by establishing a legitimate, nondiscriminatory reason for the decision to terminate Plaintiff's employment. *Velasquez v. Constellation Brands US Operations, Inc.*, No. 1:18-CV-00364-SAB, 2019 WL 2642510, at *7 (E.D. Cal. June 27, 2019); *Holtzclaw v. Certainteed Corp.*, 795F.Supp.2d 996, 1010 (E.D. Cal. 2011).

10.     To be "legitimate," the employer's proffered reason need only be "facially unrelated to prohibited bias." *Reid v. Google, Inc.*, 50 Cal.4th 512, 520 n.2 (2010).

11.     The restructuring of Plaintiff's position was part of larger effort to reallocate resources within the Inflight department to the places they were needed most is a legitimate, non-discriminatory reason for the restructuring of Plaintiff's position.

**DEFENDANT'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

12.      Plaintiff has not provided *specific* and *substantial* evidence of intentional discrimination to show pretext. *Harris*, 56 Cal.4th at 232.

**Plaintiff's Third Cause of Action for Disability Discrimination.**

13.      Retaliation and discrimination claims brought under FEHA are analyzed under the burden-shifting *McDonnell Douglas* framework. *Chisolm v. 7-Eleven, Inc.*, 383 F.Supp.3d 1032, 1048 (S.D. Cal. 2019), *aff'd,* 814 F.App'x 194 (9th Cir. 2020).

14.      To establish a prima facie case of disability discrimination, Plaintiff must show that she: (1) suffers from a disability; (2) is a qualified individual (that is, she can perform the essential functions of the job with or without reasonable accommodation); and (3) was subjected to an adverse employment action because of the disability. *Brundage v. Hahn*, 57 Cal.App.4th 228, 236 (1997).

15.      Under FEHA, a person is disabled if he or she suffers from "any physiological disease, disorder, cosmetic disfigurement, or anatomical loss" that limits a major life activity. California Gov't. C. §§ 12926(h), (k)(1).

16.      Plaintiff's claim also fails because in order to meet the knowledge requirement of the FEHA, an employer must have actual knowledge an employee suffers from a specific disability. *Scotch v. Art Inst. of California*, 173 Cal.App.4th 986, 1008 (2009).

17.      The decision as to Plaintiff's position was made weeks before her allegedly disabling incident and was therefore made without any knowledge of a disability.

18.      Even if Plaintiff can establish a prima facie case, SkyWest had legitimate, non-discriminatory and non-retaliatory reasons for restructuring Plaintiff's job. Plaintiff's position was restructured because the company

13

reallocated resources to where they were needed. *Velasquez*, 2019 WL 2642510 at *7.

19.    There is no evidence, direct or indirect, sufficient to raise a material issue of fact as to whether SkyWest's reason was pretextual. *Harris*, 56 Cal.4th at 232.

**Plaintiff's Fourth Cause of Action for Failure to Accommodate a Disability.**

20.    Under FEHA, an employer must "make reasonable accommodations for the known physical or mental disability" of an employee. Cal. Gov't Code § 12940(m)(1).

21.    "The elements of a failure to accommodate claim are (1) the plaintiff has a disability under the FEHA, (2) the plaintiff is qualified to perform the essential functions of the position, and (3) the employer failed to reasonably accommodate the plaintiff's disability." *Lui v. City and Cnty. of San Francisco*, 211 Cal.App.4th 962, 971 (2012).

22.    Where Plaintiff was not "disabled" under FEHA, nor perceived as disabled by SkyWest, SkyWest cannot be liable for failing to provide a reasonable accommodation to her as it only owed a reasonable accommodation to employees with a *known* disability that prevents them from performing the essential functions of their position. Cal. Gov. C. § 12940(m).

23.    The duty to accommodate does not arise until the employer is actually aware of an employee's disability. *Avila v. Continental Airlines, Inc.*, 165 Cal.App.4th 1237, 1247 (2008).

24.    SkyWest did not have an obligation to provide a reasonable accommodation because Plaintiff did not request, and it did not know that she needed, an accommodation. Cal. Gov. C. § 12940(n) (plaintiff has the responsibility

to initiate the reasonable accommodation process by "requesting [a] reasonable accommodation.").

25.     Because SkyWest had no reason to know that Plaintiff believed she needed an accommodation in order to perform the essential functions of her job, it was not required to provide Plaintiff with a reasonable accommodation. *Ellis v. City of Reedley*, No. CVF0501474AWISMS, 2007 WL 1098571, at *13 (E.D. Cal. Apr. 12, 2007).

**Plaintiff's Fourth Cause of Action for Failure Engage in a Good Faith Interactive Process.**

26.     Under FEHA, it is an unlawful employment practice for "an employer to fail to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental disability or known medical condition." Cal. Gov't Code § 12940(n).

27.     The employer's obligation to engage in the interactive process "arises once the employer becomes aware of the need to consider an accommodation." *Scotch*, 173 Cal.App.4th at 1013.

28.     Where there is no request for a reasonable accommodation or no reason to know about the need for an accommodation, SkyWest could not have known, or had reason to know, of any need to engage in the interactive process. *Ellis*, 2007 WL 1098571 at *13.

29.     Plaintiff did not make a request for a reasonable accommodation, and SkyWest had no reason to know Plaintiff needed an accommodation.

**Plaintiff's Second Cause of Action for Failure to Prevent Discrimination and Harassment.**

30.     To pursue a claim for failure to prevent discrimination and harassment, Government Code §§ 12940(k) and (j) require Plaintiff to prove that she was subject to unlawful discrimination or harassment.

31.     Plaintiff has not established that she was subject to unlawful discrimination of any kind and does not make a claim for harassment in her complaint.

**Plaintiff's Sixth Cause of Action for CFRA Retaliation.**

32.     The same *McDonnell Douglas* burden-shifting analysis as applies to Plaintiff's discrimination claims applies here. *Moore v. Regents of Univ. of California*, 248 Cal.App.4th 216, 234 (2016).

33.     In order to establish a prima facie case of retaliation under the California Family Rights Act, an employee must establish the following four elements: (1) the defendant was an employer covered by CFRA; (2) the plaintiff was an employee eligible to take CFRA leave; (3) the plaintiff exercised her right to take leave for a qualifying CFRA purpose; and (4) the plaintiff suffered an adverse employment action, such as termination, fine, or suspension, because of her exercise of her right to CFRA leave. *Dudley v. Dep't of Transp.*, 90 Cal.App.4th 255, 256–57 (2001); *Avila*, 165 Cal.App.4th at 1254.

34.     Plaintiff lacks evidence to establish a *prima facie* case of retaliation and, because she cannot show a causal connection between taking leave and the decision to restructure her position to part-time. *Dudley*, 90 Cal.App.4th at 256–57; *Avila*, 165 Cal.App.4th at 1254.

**DEFENDANT'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

35.     Even if Plaintiff could establish a prima facie case, SkyWest had a legitimate, not-retaliatory reason for restructuring Plaintiff's job and Plaintiff has not put forth adequate evidence that SkyWest's legitimate reasons for restructuring her position to part-time were pretextual. *Velasquez*, 2019 WL 2642510 at *7; *Harris*, 56 Cal.4th at 232.

**Plaintiff's Seventh Cause of Action for Wrongful Termination in Violation of Public Policy.**

36.     Because Plaintiff's claim for wrongful termination in violation of California Government Code § 12940 is derivative of Plaintiff's claims for age and disability discrimination and medical leave retaliation, Plaintiff's claim for wrongful termination also fails as a matter of law. *White*, 2019 WL 1171163 at *19.

**Plaintiff's Eighth Cause of Action for Failure to Pay Overtime.**

37.     Any claim related to SkyWest's alleged failure to pay overtime prior to February 6, 2016 is time-barred under the three-year statute of limitations set forth in CA Code of Civil Procedure § 338(a). *Ayala v. Frito Lay, Inc.*, 263 F.Supp.3d 891, 914 (E.D. Cal. 2017).

38.     Section 510 requires an employer to pay overtime compensation to an employee for "any work in excess of eight hours in one workday and any work in excess of 40 hours in any one work week ... at a rate of no less than one and one-half times the regular rate of pay for any employee." *Id.*

39.     A plaintiff must plead "that there was a given week in which s/he was entitled to but denied ... overtime wages." *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 644–45 (9th Cir. 2014), as amended (Jan. 26, 2015).

40.     With no evidence to support Plaintiff's overtime claim, the Court should enter summary judgment.

**DEFENDANT'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

**Plaintiff's Eleventh, Twelfth, and Thirteenth Cause of Action.**

41.    Plaintiff's Eleventh (California Labor Code Section 226 for inaccurate wage statements), Twelfth (California Labor Code § 201(a) for failure to timely pay), and Thirteenth (California Labor Code § 203 for waiting time penalties) Causes of Action all seek damages derivative of her overtime claim.

42.    Since Plaintiff does not have sufficient evidence to pursue an overtime claim, these three causes of action also fail as a matter of law and summary judgment is appropriate. *Flores v. Marriott Resorts Hosp. Corp.*, No. CV188012JVSJPRX, 2019 WL 4391119, at *6 (C.D. Cal. May 13, 2019).

**Plaintiff's Fourteenth Cause of Action for Unfair Business Practices.**

43.    Section 17200 prohibits the use of an "unlawful ... business act or practice." Cal. Bus. & Prof. Code § 17200.

44.    The Court's determination of Defendant's liability under the Code Sections cited, and on the Eighth, Eleventh, Twelfth, and Thirteenth Causes of Action, is determinative of SkyWest's liability under Section 17200. *Sullivan v. Oracle Corp.*, 51 Cal.4th 1191, 1206 (2011).

45.    As Plaintiff has failed to bring forth evidence to support her overtime pay causes of action, her Fourteenth Cause of Action fails. *Porch v. Masterfoods, USA, Inc.*, 685 F.Supp.2d 1058, 1075–76 (C.D. Cal. 2008), *aff'd,* 364 F.App'x 365 (9th Cir. 2010).

**Plaintiff's Fifteenth Cause of Action for Intentional Infliction of Emotional Distress.**

46.    In order to establish a claim for intentional infliction of emotional distress, Plaintiff must show: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress;

**DEFENDANT'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Christensen v. Superior Court*, 54 Cal.3d 868, 903 (1991).

47.    Plaintiff's claim for intentional infliction of emotional distress is barred by the exclusivity provisions of California's workers' compensation system. *Cole v. Fair Oaks Fire Protection Dist.,* 43 Cal.3d 148, 160 (1987).

48.    Even if Plaintiff were able to bring her claims outside of California's workers' compensation system, she is unable to demonstrate that the purported conduct was extreme and outrageous. *Cervantez v. J.C. Penny Co.,* 24 Cal.3d 579, 593 (1979).

49.    The reduction of hours and/or positions by a company is insufficient to support a claim for intentional infliction of emotional distress, even if improper motivation is alleged. *Janken v. GM Hughes Electronics*, 46 Cal.App.4th 55, 80 (1996).

50.    SkyWest's decision to restructure Plaintiff's position is "insufficient to support a claim" of intentional infliction of emotional distress as a matter of law. *Id.*

51.    Because Plaintiff's emotional distress claim is premised upon her discrimination and retaliation claims, it fails for the same reasons. *Phillips v. Gemini Moving Specialists*, 63 Cal.App.4th 563, 577 (1998), *as modified* (Apr. 24, 1998).

**Plaintiff's Prayer for Punitive Damages.**

52.    California Civil Code Section 3294(a) limits the availability of punitive damages to situations in which it "is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud or malice." Cal. Civ. Code Section 3294(a).

53.    This clear and convincing standard is a demanding one that "requires a finding of high probability... 'so clear as to leave no doubt.'" *Lackner v. North*, 135 Cal.App.4th 1188, 1211-12 (2006) (internal citations omitted)).

**DEFENDANT'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND
CONCLUSIONS OF LAW**

54.     Plaintiff bears the burden of proving by clear and convincing evidence that an officer, director or managing agent of SkyWest: (1) personally committed acts of oppression, fraud or malice, (2) authorized or ratified another employee's acts of oppression, fraud or malice, or (3) had advance knowledge of the unfitness of an employee who committed acts of oppression, fraud or malice and employed him or her with a conscious disregard of the rights and/or safety of others. Cal. Civ. Code § 3294.

55.     Where an opposing party's claims are subject to a heightened evidentiary standard, a motion for summary judgment may be based on the lack of evidence meeting that heightened standard. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Plaintiff has no evidence of oppression, fraud or malice necessary to support punitive damages, let alone that meets the clear and convincing standard.

DATED this 2nd day of October, 2020.

Respectfully Submitted,

By:     */s/ Gregory M. Saylin*
Gregory M. Saylin
David R. Williams
HOLLAND & HART, LLP
222 S. Main Street, Suite 2200
Salt Lake City, UT 84101
*Attorney for Defendant SkyWest Airlines, Inc.*

14032977_v13

20

**DEFENDANT'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**